## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KATRINA L. SCOTT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-11-426-SPS** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Katrina L. Scott requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a

disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 4, 1970, and was forty years old at the administrative hearing. (Tr. 40). She earned her GED and completed her Associate's Degree in criminal justice, and has worked as a general ledger bookkeeper. (Tr. 40-41, 54). The claimant alleged that she has been unable to work since April 1, 2007, due to cauda equina syndrome. (Tr. 138).

### Procedural History

On February 27, 2003, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Trace Baldwin conducted an administrative hearing and ALJ Osly F. Deramus (for ALJ Balwin) determined that the claimant was not disabled in a written opinion dated March 3, 2011. (Tr. 20-31). The Appeals Council denied review, so ALJ Deramus's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.981.

### Decision of the Administrative Law Judge

ALJ Deramus made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry 10 pounds frequently and 20 pounds occasionally, and sit/stand/walk six hours in an eight-

hour workday.  (Tr. 24).  The ALJ thus concluded that the claimant could return to her past relevant work as general ledger bookkeeper and cashier.  (Tr. 30).

## Review

The claimant contends that the ALJ erred by failing to properly assess her RFC, particularly in his failure to find any limitations related to her bladder impairments.  The Court finds that the ALJ *did* fail to properly evaluate *all* of the severe impairments at step four, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant had the severe impairments of degenerative disc disease of the lumbar spine and neurogenic bladder.  (Tr. 22).  As relevant to this appeal, the claimant was treated for a number of years for her back pain and also developed chronic bowel and bladder problems.  In 1985, the claimant underwent an anterior cervical corpectomy and vertebrectomy of the C6 with a total fusion of C5-C7.  (Tr. 335).  Following a car accident in 1995, a CT scan revealed that the claimant had an abnormal rotatory subluxation.  (Tr. 322).  The claimant's treating physician, Dr. Geo Chacko, believed that the claimant had cauda equina syndrome[3] (Tr. 270-274. 311-312, 315), but the claimant's neurologist, Dr. Smaranda Galis, said that the claimant's back pain did not indicate cauda equina syndrome.  His treating notes state, "Chronic low back and lower extremities pain with effort-dependent lower extremities weakness, symmetrical hyperreflexia (may be residual after cervical stenosis surgically corrected) but no pathological reflexes.   These findings are against cauda equina syndrome

---

[3] Cauda equina syndrome is "a rare disorder affecting the bundle of nerve roots (cauda equina) at the lower (lumbar) end of the spinal cord."  Docket No. 18, Ex. 1.

diagnosis, except the subjective saddle hypesthesia which may indicate lower sacral roots pathology (may consider a partial cauda equina syndrome, but not as the cause of her other symptoms)." (Tr. 245). The claimant was noted to be using a wheelchair at this office visit. (Tr. 245). In September and October 2009, the claimant received epidural steroid injections for her back pain. (Tr. 215-216). Following these injections, as well as an increase in the claimant's prescription for Neurontin, she reported that she could walk better "at times," but that she continued to have pain in her legs. (Tr. 238). A cervical MRI in December 2009 revealed mid and lower cervical scoliosis, as well as solid anterior fusion changes at C5-C6 and C6-C7. (Tr. 233). Dr. Chacko sent the claimant's records to another neurologist, Dr. John Cattaneo, who in May 2011 summarized the records and agreed that they did not support a diagnosis of cauda equina syndrome, and noted that she "has some sort of low back pain and difficulty with ambulation," but that he could not offer a specific neurologic diagnosis. (Tr. 462).

In additional to her back problems, the claimant was also diagnosed with a neurogenic bladder and Dr. Chacko referred her to the urodynamic laboratory for an evaluation of her voiding dysfunction. (Tr. 263, 399-400). Following the evaluation of the claimant's voiding dysfunction, Dr. Gennady Slobodov wrote to Dr. Galis, stating that the claimant had decreased bladder capacity and her detrussor had involuntary contractions unrelated to her perception of urgency, which caused a concern for upper tract deterioration. He therefore recommended that the claimant be committed to intermittent catheterization. (Tr. 440). A home health nurse visited the claimant as to her foley catheters, and noted that she assisted the claimant in changing them. She further

stated that at the time of a visit in January 2010, the claimant had walked from her couch to her kitchen without assistance.  (Tr. 237).  Dr. Slobodov's notes also indicate that the claimant was using a wheelchair at her March 2010 examination.  (Tr. 249).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical history.  In his RFC assessment, the ALJ noted a 2009 examination which stated that the claimant could step up on a stool but that weight bearing was painful on her left leg.  (Tr. 27).  The ALJ further noted that the claimant was prescribed a wheelchair by Dr. Chacko, "[d]espite the essentially normal findings" by a consultative physician.  (Tr. 28).  The ALJ further pointed out that the claimant had "been observed walking without any assistance, and her gait has been described as normal and stable." (Tr. 30).  He then adopted the findings of the state reviewing physicians who found that she could perform a full range of light work, including standing/walking/sitting six hours in an eight-hour workday (Tr. 219), and found her not disabled.  (Tr. 30).

Although the ALJ found the claimant's degenerative disc disease of the lumbar spine and neurogenic bladder to be severe impairments, he failed to include any limitations related to either of these impairments.  (Tr. 24-30).  In fact, the ALJ devoted a great deal of time at step four to discrediting the claimant's complaints of back pain, and merely referred to the claimant's treatment for neurogenic bladder without explaining how either of these severe impairments would affect her ability to work.  An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have

"explained how a 'severe' impairment at step two became 'insignificant' at step five.")
[unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir.
2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe
impairments at step two.  He failed to consider the consequences of these impairments,
however, in determining that Ms. Hamby had the RFC to perform a wide range of
sedentary work.") [unpublished opinion].   The ALJ should have explained why the
claimant's degenerative disc disease of the lumbar spine and neurogenic bladder did not
call for corresponding physical limitations related to her back, lower extremity, and need
to accommodate her bladder problems in the RFC.  *See Clifton v. Chater*, 79 F.3d 1007,
1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision,
the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as
well as the significantly probative evidence that he rejects."), *citing Vincent ex rel.
Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).  Particularly, the ALJ should
explain how the claimant's ability to ambulate without assistance from her living room to
her couch translates to the ability to stand and/or walk six hours in an eight-hour
workday.

Because the ALJ failed to explain how the claimant's severe impairments of
degenerative disc disease of the lumbar spine and neurogenic bladder at step two became
so insignificant as to require no limitations in his RFC at step four, the Commissioner's
decision should be reversed and the case remanded to the ALJ for further analysis.  If
such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should

then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma